UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

LAURA BELIN,

     *Plaintiff,*

v.

MEGHAN NELSON, in her official
capacity as Chief Clerk of the Iowa House
of Representatives,

     *Defendant.*

VERIFIED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

Case No.

INTRODUCTION

The First Amendment prohibits government officials from arbitrarily denying

reporters access to official information, and from discriminating against reporters

based on their viewpoint. Yet, since 2019, Laura Belin, renowned as "one of Iowa's

top political journalists" (*Dubuque Telegraph-Herald*) and as "a blogger and top-

notch journalist who regularly breaks news" (*Des Moines Register*), has been denied

press credentials to the Iowa House of Representatives, including access to Speaker

Grassley's press briefings. Since 2019, the Chief Clerk of Iowa's lower legislative

chamber, has arbitrarily applied an ever-shifting credentialing system to limit

Belin's ability to gather and report political news.

*Verified Complaint*                                                  1

Belin is the owner, operator and primary reporter for the online news website *Bleeding Heartland*[1] and is also the statehouse reporter for KHOI Radio in Ames. She has over 15 years of experience reporting on Iowa legislative news, and her articles are read by lawmakers, staffers and other insiders on both sides of the political aisle. Belin enjoys a strong reputation among Iowa journalists, including media outlets whose reporters did receive press credentials from the Iowa House. In fact, when she was first denied press credentials, thirty-seven editors, news directors, and publishers sent a joint letter in protest of the decision. She is, by any measure, a "bona fide correspondent[ ] of repute in [her] profession"—someone who might ordinarily be expected to access a press box and attend press conferences.

But Belin's personal political viewpoints do not align with the Chief Clerk or the majority-Republican Iowa House she shields Belin from access to. And Belin is a reporter that reports the news, even when that news is not favorable to Republican House members. The denial of her press credentials is, thus, not only arbitrary, but punishment for Belin's refusal to report from a sanctioned point of view. And, absent injunctive relief, Belin will continue to be unfairly limited in her ability to observe and report on Iowa's 90th Legislative Session. This Court should act to secure Belin's First Amendment rights to perform her vital press function.

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff alleges that Defendant is violating 42 U.S.C. §

---

[1] Available at https://www.bleedingheartland.com/.

1983 by depriving her, under color of state law, of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution.

## VENUE

2. This Court is the proper venue for this action per 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the claim have occurred and are occurring in this judicial district.

## PARTIES

3. Plaintiff Laura Belin is the publisher, editor, and primary reporter for Bleeding Heartland, a news website focused on Iowa politics. She is also the Statehouse reporter for KHOI Radio in Ames and co-host of the station's "Capitol Week" program, as well as a member of the Iowa Capitol Press Association and Iowa Writers' Collaborative.

4. Defendant Meghan Nelson is the current Chief Clerk of the Iowa House of Representatives in Des Moines, Iowa. Nelson administers and enforces the media credential policy at issue in this suit on behalf of the Iowa House. She is sued in her official capacity.

## STATEMENT OF FACTS

### *Laura Belin's reporting and commentary*

5. Laura Belin has been a news reporter for almost 30 years. She began writing about politics as an analyst for the Prague-based Open Media Research Institute

and later reported for Radio Free Europe/Radio Liberty. She covered Russian politics, including campaigns and elections, and media issues from 1995 to 2005.

6. Created in January 2007, community blog Bleeding Heartland provides reporting and commentary on Iowa politics, including campaigns and elections, state government, social, and environmental issues. Belin joined the publication in April 2007 and has served as its lead author and sole editor since 2008. Bleeding Heartland is now published by Bleeding Heartland LLC, an Iowa limited liability company of which Belin is the sole member.

7. Neither Bleeding Heartland, nor Belin personally, take contributions from political parties, candidates, campaigns, organizations, or groups. Nor do they accept contributions from any federal, state, or local government agency.

8. Belin devotes her full-time professional efforts to gathering, writing, and editing the news content and commentary for Bleeding Heartland—which, in 2023 alone, published 498 news articles and commentaries featuring the work of more than 125 authors. While the Iowa Legislature is in session, Bleeding Heartland typically gets 2,000 to 5,000 or more unique daily visitors, including lawmakers, staffers, and other insiders. In fact, during the previous 2023 legislative session, it got between 88,000 and 119,000 monthly views. Her most viewed articles for the year were largely about legislators or legislative action. *See* Belin, Laura, *The 23 most-viewed Bleeding Heartland posts of 2023*, Bleeding Heartland, Jan. 1, 2024, https://perma.cc/3VNG-HSL9.

9. Belin is also frequently asked to write opinion articles for other news organizations. Her byline has appeared in the online news sites for the Iowa Capital Dispatch, CNN, Raw Story and several local newspapers. She also periodically appears on C-SPAN's Washington Journal to discuss Iowa politics.

10.    Belin enjoys a strong reputation among Iowa journalists. One Pulitzer Prize winning columnist has called her an "astute observer of politics left and right" who "offers straight-forward statistical analysis on legislative races, takes deep dives into state fiscal affairs with guest analysts, and the like."[2] The Fix at the Washington Post named Belin as one of Iowa's outstanding political reporters in 2020 and previously named Bleeding Heartland among the "best state-based political blogs."[3] Politico put Belin on its list of "the must-follow journalists on the ground in Iowa, New Hampshire and South Carolina, a list geared toward anyone in Washington with a stake in the 2016 presidential campaign[.]"[4] And as noted supra, the *Dubuque Telegraph-Herald* editors have stated Belin is "one of Iowa's top political journalists;"[5] while the *Des Moines Register* described her as a "top-notch journalist who regularly breaks news."[6]

---

[2] Cullen, Art, *Shooing out the public*, Storm Lake Times Pilot, Jan. 30, 2019, available at: https://perma.cc/ZE76-762D.

[3] Jennings, Natalie, *The Fix's 2020 list of outstanding politics reporters to follow in every state*, The Washington Post, Oct. 26, 2020, available at: https://perma.cc/H5ZU-7WU8

[4] Glueck, Katie, *The early-state must follows*, Politico, Jan. 5, 2015, available at: https://perma.cc/6VJT-ZXH6

[5] *Our opinion: press pass denial takes on air of politics*, Telegraph-Herald, Feb. 1, 2019, available at: https://perma.cc/LGT8-WU43

[6] Hunter, Carol, *Roses & thistles: Iowa GOP lawmakers apparently afraid of liberal blogger's coverage*, Des Moines Register, Feb. 1, 2019, available at: https://perma.cc/N4G5-99A2

11.     Prior to the 2019 Iowa Legislative Session – the first session for which Belin sought press credentials – Belin had frequently reported on Iowa legislators, particularly House members. Belin's articles on the House were often critical of legislators, particularly those in the Republican-majority.[7] They still are.[8]

*Press Facilities and Briefings*

12.     The Iowa House of Representatives has a press box on its chambers floor that credentialed reporters may use. The Iowa Senate does not.

13.     Access to the House press box gives journalists certain advantages they would not otherwise have. For example, access to the press box allows a journalist to:

a. Use seats and desks that allow them to use their laptops and take notes;

b. Take photographs and video from an advantageous position;

c. Use electrical outlets to power their phones, laptops, and other devices;

d. Request interviews from legislators on the floor; and,

e. Hear conversations between legislators and staff on the floor.

---

[7] *See, e.g.,* Belin, Laura, *Ethics board investigating pro-Republican law-breaking in Iowa House race,* Bleeding Heartland, Nov. 18, 2018 (https://www.bleedingheartland.com/2018/11/18/ethics-board-investigating-pro-republican-law-breaking-in-iowa-house-race/); *see also* Belin, Laura, *Chris Hagenow won't rule out fleeing to safe Republican House seat,* Bleeding Heartland, Feb. 24, 2018 (https://www.bleedingheartland.com/2018/02/24/chris-hagenow-wont-rule-out-fleeing-to-safe-republican-house-seat/)

[8] *See, e.g.,* Belin, Laura, *Seven bad policies Iowa Republicans slipped into budget bills*, Bleeding Heartland, May 22, 2023 (https://www.bleedingheartland.com/2023/05/22/seven-bad-policies-iowa-republicans-slipped-into-budget-bills/); *see also* Belin, Laura, *Six ways the GOP budget shortchanged Iowans with disabilities*, Bleeding Heartland, May 9, 2023 (https://www.bleedingheartland.com/2023/05/09/six-ways-the-gop-budget-shortchanged-iowans-with-disabilities/); *see also* Belin, Laura, *The twelve Iowa Republicans who voted against school vouchers*, Bleeding Heartland, Jan. 24, 2023 (https://www.bleedingheartland.com/2023/01/24/the-twelve-iowa-republicans-who-voted-against-school-vouchers/).

14.     Press credentials guarantee journalists seats on the House floor on days when the public seating is full. Additionally, House press credentials allow reporters to receive press releases, transcripts of speeches, and staff analyses of bills that are routinely distributed to journalists in the press boxes. Credentialed reporters are also able to speak to legislators and staff as events occur on the floor.

15.     Credentialed reporters are also given the ability to participate in impromptu press conferences that are often held by lawmakers at the front of the press boxes during the legislative day, including press briefings held by Speaker Grassley before or after House sessions.

16.     Prior to 2019, Nelson's predecessor, Chief Clerk Carmine Boal, routinely gave credentials to journalists from a wide range of media outlets, including newspapers, television and radio stations, news services, and websites. Since 2019, however, Boal, and then Nelson as her successor, arbitrarily applied the credentialing policy to ensure that only *certain* journalists get access.

*2019 Iowa Legislative Session*

17.     Belin first requested House floor press credentials to obtain designated work space and easier access to briefings with key lawmakers in January 2019.

18.     Belin had not sought access to the House floor prior to 2019 because her personal and professional schedule did not allow for it. Around the same time her circumstances changed, in late 2018, Belin also learned that two longtime statehouse reporters (Joyce Russell of Iowa Public Radio and William Petroski of the Des Moines Register) were retiring, and that the Associated Press would not

bring on a second statehouse reporter to help cover the legislative session as it had done for many years. Belin felt that she could bolster the declining statehouse press corps.

19.     When Belin first applied in 2019, the Chief Clerk of the Iowa House did not have any written policy regarding how press credentials were approved and what criteria determined which members of the press were permitted in the House floor press area.

20.     On January 3, 2019, Belin emailed then Chief-Clerk Carmine Boal, Nelson's predecessor, stating that she would "like to apply for a seat in the Iowa House press gallery during the 2019 legislative session" and asking for "guidance" on how to "find an accreditation form on the [House] website." **Exhibit A** at 6.

21.     Boal did not provide that guidance. Instead, she flatly denied Belin's request by telling her that "press credentials are not issued to members of the public." *Id*. at 5.

22.     Belin asked Boal for clarification and explained that she "ha[d] been covering Iowa legislative happenings for Bleeding Heartland for nearly 12 years" and had also had her reporting "cited in many Iowa and national media outlets." *Id*. at 4-5. Boal's reply did not acknowledge the facts Belin had raised. Instead, Boal stated that "[r]ules for the press are addressed in House Rules 4 and 20," and that "for further guidance, the House has used Congressional rules governing press galleries . . . accessible on Congress' website." *Id*. at 4.

23.     Iowa House Rules 4 and 20 discuss what members of the press are allowed to do in the House chamber, not what criteria are used to determine who is a member of the press. And the Congressional Rules provide only that press galleries are reserved for "bona fide resident correspondents of reputable standing, giving their chief attention to the gathering and reporting of news."[9]

24.     Belin made another attempt to understand why she was denied press credentials. On January 8, 2019, she asked Boal to explain what "specific language" in the House and Congressional Rules "exclud[ed] [her] as a member of the press." *Id*. Belin also asked whether "the objection was grounded in Iowa House leaders disliking the content of [her] reporting." *Id*. at 3.

25.     Boal did not reply.

26.     Belin sent follow up requests on January 11, 2019; January 15, 2019; January 18, 2019 and January 27, 2019 asking, each time, for an explanation of how she failed to qualify as "news media." *Id*. at 1-3.

27.     Boal did not reply.

28.     Although Boal would not respond to Belin, she did try to justify this sudden use of an unwritten policy to allow only arbitrarily defined "news media" into the House press box. In a January 25, 2019 written statement she issued to the Associated Press, Boal argued "The House rules limit access to the floor of the House to 'representatives of the press, radio, and television' . . . Those that meet

---

[9] *Rules and Regulations*, Periodical Press Gallery, available at: https://perma.cc/89TA-PJ7Q

those requirements have received credentials. Those that do not have been denied. House Rules have been applied uniformly and without consideration of content."[10]

29.     Belin's January 27, 2019 email to Boal addressed this statement and asked her to explain how it could possibly be true when "in the past years, the Iowa House ha[d] credentialed others reporting for online publications." Exh. A at 1. She asked Boal to send her the list of applicants who, like her, had been denied credentials to cover the Iowa House and a list of those from previous sessions who had also been denied. *Id*.

30.     Boal never responded. Boal also never sent any lists.

31.     Instead, the next month, the Iowa House issued its first-ever written policy on credentialing. In its policy, the Iowa House declared that the Chief Clerk administered press credentials for onsite media access to the House and would only credential "bona fide correspondents of repute in their profession." **Exhibit B** at 1. Thus, an applicant would have to "establish to the satisfaction of the Chief Clerk of the House that he or she is a paid correspondent who requires on-site access to House representatives and staff." *Id*.

32.     Additionally, the 2019 Policy stated that "[c]orrespondents must be employed by a news organization . . . [w]ith the General Publication periodicals mailing privileges under U.S. Postal Service rules, and that publishes regularly; or

---

[10] Foley, Ryan, *Iowa House denying press credentials to influential blogger*, Associate Press, https://perma.cc/CGS9-6KCA (January 25, 2019) (quoting H.R. 20, 87th Leg. (Iowa 2017), available at https://perma.cc/3739-JBBP).

[w]hose principal business is the regular dissemination of original news to a broad segment of the public." *Id*.

33.     The 2019 Policy also stated that credentialed press "must not be engaged in any lobbying or advocacy, advertising, publicity, or promotion for any individual, political party, group, corporation, organization, or a federal, state or local government agency, or in prosecuting any claim before the House or any federal, state, or local government department, and will not do so while a credentialed member of the press." *Id*.

34.     Finally, the 2019 Policy required that "[t]he applicant's publication must be both editorially independent of any institution, foundation or interest group that lobbies the state government and also established principally as a general news organization." *Id*.

35.     Forty-three professionals, including thirty-seven editors, news directors, and publishers, signed a letter from the Iowa Freedom of Information Council to the governor and legislative leaders regarding the denial of Belin's application. **Exhibit C**. They informed the House that Boal's denial of Belin's application and sudden creation of a policy resulted in "discouraging coverage through arbitrary rules that we believe deny media credentials to legitimate reporters." *Id*. at 1. They urged the House to "immediately revise [its] policies and practices on media credentials and to begin granting them in ways that are above question and that ensure fairness and equality of access." *Id*. at 2.

*2020 Iowa Legislative Session*

36.     Belin applied for press credentials with the Iowa House again in

January 2020. This time, Belin included a letter with her application, explaining

her qualifications under the policy:

> Bleeding Heartland is an LLC whose principal business is the regular
> dissemination of original news about Iowa politics to a broad segment of the
> public. The website published 638 articles or commentaries during 2019, of
> which I wrote 348. Dozens of those pieces related to the Iowa House. A number
> of Iowa and national media outlets have cited my reporting and analysis.
>
> As the sole member of Bleeding Heartland LLC, which is duly incorporated
> under Iowa law, I am entitled to any and all distributions and profits from the
> website, including reader contributions. Consequently, like a reporter who
> earns a living through subscriptions to the publication he owns, I meet the
> remuneration criteria of paid correspondents. Bleeding Heartland is editorially
> independent of all organizations and groups lobbying state government.

**Exhibit D**.

37.     On January 10, 2020, Nelson responded to Belin's application

submission via email stating that Belin "d[id] not meet the requirements of the

Iowa House of Representative's press credentialing policy." **Exhibit E**. The only

reason Nelson provided Belin for the denial was that "[t]he House does not

credential outlets that are nontraditional/independent in nature." *Id*.

38.     Belin responded the same day, noting that "[t]he Iowa House

credentialing policy says nothing like this: 'the House does not credential outlets

that are nontraditional/independent in nature.'" *Id*. Belin asked Nelson for a

"specific reason" why she did not meet the criteria for press credentials and noted

she was similarly situated to Jack Hunt, who had been "credentialed in the Iowa

House for decades." *Id*.

39.     Jack Hunt is the reporter for, as well as owner and operator of, the Iowa Legislative News Service, which distributes news to subscribers via email on the Iowa legislature, providing same-day analysis of bills and amendments, and reports on all committee action and legislative debate.

40.     Although Jack Hunt appeared on a January 21, 2020 list of Iowa House credentialed reporters, his name was omitted from a revised list issued January 24, 2020.

41.     Upon information and belief, the House removed Hunt from the list after Nelson informed him that there was a "problem" with his application.

42.     Upon information and belief, Nelson also told Hunt that the House would credential him through an Omaha-based radio station. Although Hunt was neither employed nor paid by that station, he reappeared on a February 7, 2020, list of House-credentialed reporters, listed as representing KIBM Radio Iowa/KOBM Radio Omaha.

43.     Having learned of the loophole Nelson found for Hunt, Belin signed an employment agreement with KHOI Radio to serve as its paid statehouse correspondent in December 2020.

44.     KHOI's station manager subsequently emailed Meghan Nelson to request a credential application on Belin's behalf, noting that she would be covering the 2021 legislative session for the station. **Exhibit F at 2-3**. Nelson vaguely replied that the House had not yet decided what the process would be for the next session. *Id*. at 2.

*2021 Legislative Session*

45.     On January 4, 2021, Meghan Nelson posted a letter on the Iowa legislature's website indicating that "the House will not be issuing credentials for 2021, which allowed you to gain access to the chamber floor." **Exhibit** G. Although Nelson did not expressly mention Covid-19 in her letter, she did explain that the decision was a result of the House's "several mitigation efforts to ensure the health and safety of legislators, staff, media, and members of the public." *Id*. Dispensing of the press area on the House floor would "allow for additional work space for Representatives and staff." *Id*.

46.     No journalists were assigned seats on the Iowa House press bench at any time during the regular 2021 legislative session, or the two special sessions held in October 2021 to deal with redistricting plans.

47.     Speaker Grassley did hold regular press briefings during the 2021 legislative session via Zoom. Despite requests, however, Belin was never provided the Zoom link or access code to participate in those weekly briefings.

48.     The Iowa Capitol Press Association took issue with this new policy and petitioned the Iowa House to reverse course. In December 2021, the Iowa House leaders ultimately agreed to allow some reporters to be credentialed for the 2022 legislative session.

*2022 Legislative Session*

49.     In December 2021, the Iowa House published a new "Work Space Application Policy." **Exhibit H**. This policy contained the same language previously

seen in the 2019 Policy, with some additions. For the 2022 Legislative Session, each House-credentialed journalist was required to be a "full-time paid employee of a news organization" whose principal business was required to be "the regular dissemination of original, nonpartisan news to a broad segment of the public." *Id.* The new policy also required that applicants abide by the Society of Professional Journalists' Code of Ethics. *Id.*

50.     Upon receiving this new policy, and prior to applying for the 2022 Legislative Session, Belin ensured she had a written employment agreement designating her as a full-time paid employee of Bleeding Heartland, LLC. She also made certain that she was being paid a full-time salary for her reporting beginning in January 2022. Both of those arrangements remain in effect.

51.     Because the Society of Professional Journalists' Code of Ethics calls for commentary and advocacy to be separately labeled, Belin also re-tagged approximately 2,000 Bleeding Heartland posts, adding new tags—news, analysis, commentary, etc.—to everything published from the spring of 2019 onward, and to some higher-profile posts from earlier years that might be more likely to show up on search engines. She also published a post on the website explaining the new tagging system and added a line on her "about" page to clarify that Bleeding Heartland conforms to the SPJ Code of Ethics.

52.     Belin submitted her credential application for an Iowa House workspace in late December 2021. **Exhibit I**. Nelson denied that application, claiming that Belin "d[id] not meet the requirements of the Iowa House of

Representative's press work space policy." *Id*. Nelson did not specify how Belin's application fell short.

*2023 Legislative Session*

53.     Belin submitted her credential application for an Iowa House workspace in late December 2022. **Exhibit J.** Nelson again rejected Belin's application without explanation. *Id*.

*2024 Legislative Session*

54.     Belin submitted her credential application for an Iowa House workspace on December 5, 2023.

55.     As part of her application, Belin was asked to explain why she needed access to the house floor. She responded:

> I frequently write and publish original reporting about Iowa legislative happenings, including Iowa House floor debates. Access to the House floor is important for newsgathering in many ways. During floor debates, reporters can obtain high-quality video and photographs, see what is happening in parts of the chamber that are not visible on the official video or from high up in the public gallery, and hear conversations in the well that are not audible from the public gallery. Reporters with work space on the House floor also are able to participate in the Speaker's weekly briefings.

56.      On December 21, 2023, and again on January 4, 2024, Belin emailed Nelson inquiring about the status of her application.

57.     Nelson responded on January 5, 2024 stating that Belin's application had, again, been denied because Belin "d[id] not meet the requirements of the Iowa House of Representative's press work space policy." **Exhibit K**. Nelson did not explain which of the requirements Belin had failed to meet.

58.     The 90th Iowa Legislative Session began, and the House press box was opened, on January 8, 2024. That same day, the House members graveled in and gave opening remarks. The next day, January 9, 2024, the Governor delivered her Condition of the State speech in the Iowa House chamber.

59.     Every press member, except Belin, could view and report on these events from the House press box. Every statehouse reporter, besides Belin, was able to cover the graveling in and opening remarks by the House leaders from both parties from the press box. Those reporters obtained videos, photographs, and audio recordings as part of their reporting materials – and unavailable to members of the public sitting in the public gallery section – that Belin could not obtain. They spoke to legislators and their staff, witnessed legislative action up close, were given legislative materials and attended impromptu press briefings that Belin could not.

60.     Every day of the 2024 Legislative Session that this Court does not intervene, Belin will continue to be obstructed from the same news gathering opportunities as are afforded to her colleagues in the media.

COUNT ONE
RIGHTS OF FREE SPEECH AND PRESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
ARBITRARY AND DISCRIMINATORY DENIAL OF PRESS CREDENTIALS

61.     Belin realleges and incorporates paragraphs 1 through 59.

62.     By refusing to issue House press credentials to Belin, which denies Belin access to the House press box and Speaker Grassley's press briefings equal to that afforded to other media representatives, Nelson is violating Belin's rights to

free speech and freedom of the press under the First Amendment, as applied to the states through the Fourteenth Amendment.

63.     Belin has the same First Amendment right to gather and report information from the House floor enjoyed by other, credentialed media representatives. Belin also has the same First Amendment right to attend and report on Speaker Grassley's press briefings exercised by her credentialed media colleagues.

64.      Nelson's arbitrary application of the press credential policy against Belin has deprived her of her First Amendment speech and press rights.

65.     Although Belin meets all the requirements of the press credential policy, Nelson denied Belin's application for press credentials on the basis that Belin is a "nontraditional" reporter and continues to deny Belin access to the House floor press box. But there is no First Amendment distinction between institutional press and other reporters, such as those who work for independent news websites or blogs. When gathering information to disseminate to the public, "nontraditional" journalists are entitled to the same First Amendment protections afforded "traditional" journalists. And the credentialing policy does not itself utilize a "traditional/nontraditional" distinction.

66.     Nelson's denial of press box access to Belin fails any level of First Amendment scrutiny.

67.     By arbitrarily denying Belin press credentials, Defendant Nelson, under color of law, has violated and continues to violate Belin's First Amendment

rights to free speech and press. Accordingly, Defendant Nelson injured, and continues to injure, Belin in violation of 42 U.S.C. § 1983. Belin is entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of Nelson's unconstitutional customs, practices, and policies; and attorney fees and expenses under 42 U.S.C. § 1988.

COUNT TWO

RIGHTS OF FREE SPEECH AND PRESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

CONTENT AND VIEWPOINT DISCRIMINATION

68.     Belin realleges and incorporates paragraphs 1 through 66.

69.     The press credential policy's limitation of credentials to those who report "nonpartisan news to a broad segment of the public," on its face and as applied against Belin, unconstitutionally discriminates against speech and press on the basis of content and viewpoint.

70.     To the extent that this policy discriminates against speech and press merely based on content, it fails strict scrutiny. Defendant Nelson has no compelling governmental interest in denying reporters access to the press area or the Speaker's press briefings on grounds that their reporting does not constitute "nonpartisan news to a broad segment of the public." To the extent this policy discriminates against speech and press on the basis of viewpoint, such viewpoint discrimination is unconstitutional per se.

71.     By applying the press credential policy against Belin, Defendant Nelson, under color of law, has violated and continues to violate Belin's First Amendment rights to free speech and press. Accordingly, Defendant Nelson injured,

and continues to injure, Belin in violation of 42 U.S.C. § 1983. Belin is entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the press credentialing policy's limitation of credentials to those who report "nonpartisan news to a broad segment of the public," and attorney fees and expenses under 42 U.S.C. § 1988.

COUNT THREE
RIGHTS OF FREE SPEECH AND PRESS, U.S. CONST. AMEND. I, XIV, 42 U.S.C. § 1983
PRIOR RESTRAINT

72.     Plaintiff realleges and incorporates paragraphs 1 through 70.

73.     The Iowa House press credential policy constitutes a prior restraint in violation of the First Amendment. By requiring that all applicants obtain press credentials from the Iowa House, the policy establishes a regime that gives the government unbridled discretion to permit the exercise of First Amendment rights.

74.     Nelson wields that unbridled discretion, only approving credentials for journalists she deems to be "bona fide correspondents." Nelson relies on the undefined, broad terms of the credential policy to subjectively exclude news media and deprive them of the ability to gather news in a manner equal to that afforded to other media representatives. The failure to adopt and apply narrow, definite, and purely objective standards for House press credentials renders the credentialing process unconstitutional.

75.     Nelson has no compelling reason to justify this impermissible credentialing process, nor is this process narrowly tailored.

76.     Requiring Belin to submit to a prior restraint that vests unbridled discretion in the decisionmaker unconstitutionally deprives Belin of her free speech and press rights.

77.     By subjecting Belin to the press credential policy, Defendant Nelson, under color of law, has violated and continues to violate Belin's First Amendment rights to free speech and press. Accordingly, Defendant Nelson injured, and continues to injure, Belin in violation of 42 U.S.C. § 1983. Belin is entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of a press credentialing policy that provides Nelson unbridled discretion to deny whomever she chooses from being able to gather news and information. She is also entitled to attorney fees and expenses under 42 U.S.C. § 1988.

COUNT FOUR
FIRST AMENDMENT AND FOURTEENTH AMENDMENT, 42 U.S.C. § 1983
VAGUENESS

78.     Plaintiff realleges and incorporates paragraphs 1 through 76.

79.     As notice is the first element of due process, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that, however valid their application may be in some instances, are so vague as to chill protected speech.

80.     The press credential policy's limitation of credentials to those who report "nonpartisan news to a broad segment of the public," and Nelson's policy barring press credentials to "nontraditional/independent" media, are unduly vague.

It is unclear what is meant by "nonpartisan news," "a broad segment of the public," or "nontraditional/independent" media. What appears to be "partisan news" is often in the eye of the beholder, and the entire public has access to publications distributed by ordinary channels, such as broadcast radio and the internet. It is also unclear what may count as "nontraditional/independent" media. Belin acts in the longstanding American tradition of journalism, and her publication is as "independent" as any closely held publication.

81.    Accordingly, Belin cannot understand how she could qualify for a press credential under these vague criteria.

82.    By applying vague press credential policies against Belin, Defendant Nelson, under color of law, has violated and continues to violate Belin's First Amendment rights to free speech and press and Fourteenth Amendment right to due process. Accordingly, Defendant Nelson injured, and continues to injure, Belin in violation of 42 U.S.C. § 1983. Belin is entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the press credentialing policy's limitation of credentials to those who report "nonpartisan news to a broad segment of the public," and Nelson's policy of withholding credentials from "nontraditional/independent" journalists. She is also entitled to attorney fees and expenses under 42 U.S.C. § 1988.

## Prayer for Relief

WHEREFORE, Plaintiff Laura Belin requests that judgment be entered in her favor and against Defendant Nelson as follows:

A. Orders preliminarily and permanently enjoining Defendant Nelson, her officers, agents, servants, employees, and all persons in active concert or participation with her who receive actual notice of the injunction, from (1) limiting press credentials to those who publish "nonpartisan news to a broad segment of the public" and (2) withholding press credentials from journalists on account of their being "nontraditional" or "independent;" and further, enjoining Defendant to grant Belin press credentials for the 2024 legislative session;

B. Declaratory relief consistent with the injunction;

C. Costs of suit;

D. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Any other relief this Court may grant in its discretion.

Respectfully submitted.                          Dated: January 19, 2024

Charles Miller*                                   ___/s/ Jack Bjornstad___
Ohio Bar No. 0073844                              Jack Bjornstad
Courtney Corbello*                                Iowa Bar No. 16147
Trial Counsel                                     JACK BJORNSTAD LAW OFFICE
Texas Bar No. 24097533                            1700 Hill Avenue
INSTITUTE FOR FREE SPEECH                         Spirit Lake, Iowa 51360
1150 Connecticut Ave., NW                         Tel: 712-332-5225
Suite 801                                         jack@bjornstad.law
Washington, D.C. 20036
Tel: (202) 985-1644
Fax: (202) 301-3399
cmiller@ifs.org
ccorbello@ifs.org

*Counsel for Laura Belin*
*\*pro hac vice admission being sought*

*Verified Complaint*                                                      23

## Verification

I, Laura Belin, declare as follows:

1. I am the Plaintiff in the present case; a citizen of the United States of America, and a resident of the State of Iowa. I am the editor, publisher and primary reporter for Bleeding Heartland and the statehouse reporter for KHOI Radio.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities and my intentions are true and correct, as are the factual statements concerning Defendant and her actions.

Executed on January 19, 2024.

_Laura Belin_
Laura Belin